# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DOUGLAS BOURDON,

     Plaintiff

     v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

     Defendants

Civil Action No. 15-2241 (CKK)

## MEMORANDUM OPINION
(February 16, 2017)

This case arises from the United States Citizenship and Immigration Service ("USCIS") West Palm Beach Field Office's denial of Plaintiff's petition to classify his wife, an adult citizen of Vietnam, as his immediate relative for immigration purposes. The USCIS West Palm Beach Field Office denied Plaintiff's petition pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act" or "AWA"), which prohibits U.S. citizens from filing such petitions if they have been convicted of certain specified offenses against minors, unless they can prove that they would pose no risk to the alien-beneficiary of the petition. Plaintiff was convicted of one of these specified offenses—the possession of child pornography—in 2003, and the USCIS West Palm Beach Field Office determined that Plaintiff failed to establish that he qualified for the "no risk" exception to the AWA's prohibition. Plaintiff contends that the denial of his petition was unlawful for a variety of reasons. Pending before the Court is Defendants' [7] Motion to Dismiss or Change Venue. Defendants ask the Court to dismiss Plaintiff's Complaint for lack of jurisdiction and for failure to state a claim or, in the alternative, to transfer this action to the United States District Court for the Southern District of Florida.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS-IN-PART and DENIES-IN-PART WITHOUT PREJUDICE Defendants' motion.  The Court GRANTS Defendants' motion to transfer this action to the Southern District of Florida because venue would have been proper in that District had this action been brought there originally, and the relevant private and public interest factors weigh in favor of transfer.  Because the Court transfers this action, it will not reach the merits of Defendants' motion to dismiss for lack of jurisdiction and for failure to state a claim.  Instead, the Court DENIES that portion of Defendants' motion WITHOUT PREJUDICE to it being refiled in the Southern District of Florida, if appropriate.[2]

## I. BACKGROUND

### A.  Statutory Background

Immediate relatives of United States citizens, including spouses, receive certain preferential treatment under U.S. immigration law.  *See, e.g.*, 8 U.S.C. § 1151(b)(2)(A)(i) (stating that the immigration of immediate relatives is not subject to numerical limitations); Pl.'s Compl. for Declaratory and Injunctive Relief, ECF No. 1, ("Compl.") at ¶ 21.  However, U.S.

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mot. to Dismiss or Change Venue ("Defs.' Mot."), ECF No. 7;
- Pl.'s Opp'n to Mot. to Dismiss or Change Venue ("Pl.'s Opp'n"), ECF No. 11; and
- Defs.' Reply in Support of Mot. to Dismiss or Change Venue ("Defs.' Reply"), ECF No. 13.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

[2] The Court has decided to dismiss this portion of Defendants' motion without prejudice instead of holding it in abeyance for the transferee court.  After the briefing on this motion was completed, Defendants filed a notice of supplemental authority regarding a recent opinion from the Eighth Circuit Court of Appeals that appears to address a number of the issues in this case and Plaintiff filed a response to that notice.  It may be more efficient and helpful to the transferee court for the parties to file and brief this motion anew, incorporating the most up-to-date case law and without needing to focus on arguments regarding venue.

citizens generally must formally petition the government to recognize their foreign relative as an "immediate relative" before they can receive such treatment. The procedures for filing such a petition are set forth in 8 U.S.C. § 1154. The AWA, which Congress passed in 2006, added language to section 1154 that states that these procedures "shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition" is filed. 8 U.S.C. § 1154(a)(1)(A)(viii). A "specified offense against a minor" is elsewhere defined to include, among other things, the "[p]ossession, production, or distribution of child pornography." 42 U.S.C. § 16911(7)(G).

Plaintiff alleges that the Secretary of Homeland Security has delegated responsibility for deciding whether a petitioner has proven that he poses "no risk" under the AWA to Department of Homeland Security ("DHS") line officers, whose adverse decisions on this issue are not subject to oversight or appeal. Compl. ¶ 5. Plaintiff further alleges that the DHS requires its line officers to require the petitioning U.S. citizen to establish that they pose no risk "beyond a reasonable doubt." *Id.*

**B. Factual Background**

Plaintiff Douglas Bourdon, an American citizen and resident of Stuart, Florida, alleges that Defendant DHS has wrongfully refused him the opportunity to petition for recognition of his spousal relationship with his wife, Ms. Thi Thuan Tran. *Id.* ¶¶ 1, 11. Ms. Tran is a citizen of Vietnam. *Id.* ¶ 31. Plaintiff and Ms. Tran were married on May 24, 2008, and on June 18, 2008 Plaintiff submitted a petition requesting that the government recognize Ms. Tran as his immediate relative. *Id.* ¶¶ 31-32. On January 15, 2009, Plaintiff and Ms. Tran appeared for an

interview regarding that petition.  *Id.* ¶ 32.  Plaintiff alleges that at that interview he was informed that he would be prevented from petitioning for recognition of his spouse pursuant to the AWA because Plaintiff had previously been convicted of a "specified offense against a minor"—the possession of child pornography—unless Plaintiff was able to satisfy the AWA's "no risk" exception.  *Id.*

The USCIS then issued Plaintiff a Request for Evidence ("RFE") regarding Plaintiff's child pornography offense and rehabilitation.  *Id.* ¶ 33.  Plaintiff responded to the RFE, providing an affidavit from Ms. Tran and reports from a social worker and forensic examiner.  *Id.* ¶¶ 33-34.  Despite this evidence, the USCIS West Palm Beach Field Office denied Plaintiff's petition on December 4, 2009 based on his child pornography conviction.  *Id.* ¶ 35.  That office determined that Plaintiff had not demonstrated "beyond a reasonable doubt" that he posed no risk to Ms. Tran.  *Id.*

Plaintiff appealed that decision to the Board of Immigration Appeals ("BIA") on January 7, 2010.  *Id.* ¶ 36.  The BIA subsequently remanded the petition to the USCIS West Palm Beach Field Office for further development of the record and additional briefing.  *Id.*

Although Plaintiff submitted the requested briefing on August 31, 2012, he had not yet received a new decision regarding his petition as of March 4, 2014.  *Id.* ¶¶ 37-38.  Accordingly, Plaintiff filed suit at that time in the United States District Court for the Southern District of Florida, seeking to compel a decision on his petition.  *Id.* ¶ 38.  Following additional procedural maneuvers, the USCIS West Palm Beach Field Office issued a new RFE, and Plaintiff provided that office with additional information regarding his conviction and rehabilitation.  *Id.* ¶ 39.  Plaintiff submitted additional forensic reports, medical records, social security records, evidence of employment, and affidavits from Plaintiff, Ms. Tran and members of Ms. Tran's family.  *Id.*

On November 21, 2014, the USCIS West Palm Beach Field Office again denied Plaintiff's petition. *Id.* ¶ 40. Plaintiff alleges that this denial was wrongful for a number of reasons. First, Plaintiff alleges that the USCIS wrongfully applied a "beyond a reasonable doubt" standard to its decision that Plaintiff had failed to establish that he qualified for the AWA "no risk" exception. *Id.* Second, Plaintiff alleges that USCIS based its denial on risks Plaintiff might pose not to Ms. Tran, but to "society" at large, or any grandchildren Ms. Tran may have in the future—considerations Plaintiff claims are outside the scope of the AWA. *Id.* Third, Plaintiff alleges that USCIS wrongfully based its denial on the fact that Plaintiff had traveled to Vietnam and Thailand during the pendency of his petition, which the West Palm Beach Field Office viewed—incorrectly, in Plaintiff's eyes—as countries tolerant of child abuse. *Id.* ¶ 41. Fourth, Plaintiff alleges that the USCIS wrongfully based its denial on its determination that certain declarations filed by Ms. Tran's family members were "self-serving" because the Field Office incorrectly believed that the declarants stood to benefit from Ms. Tran's entry into the country because they themselves would then be able to emigrate from their home countries to the United States. *Id.* ¶ 43. Fifth, Plaintiff alleges that the West Palm Beach Field Office ignored much of the evidence Plaintiff had submitted to establish that he posed no risk to Ms. Tran. *Id.* ¶ 44. Plaintiff appealed the denial to the BIA, but the BIA dismissed Plaintiff's appeal on July 21, 2015. *Id.* ¶¶ 45-46.

Based on the preceding facts, Plaintiff has asserted six causes of action. *Id.* ¶¶ 49-86. Plaintiff claims that Defendants have impermissibly applied the AWA retroactively, have exceeded the scope of Congress' enumerated powers, and have violated the Administrative Procedure Act ("APA") and the Fifth Amendment to the United States Constitution. *Id.* As relief, among other things, Plaintiff requests that this Court vacate the USCIS West Palm Beach

Field Office's decision and issue a mandatory injunction requiring Defendants to approve

Plaintiff's visa petition on behalf of Ms. Tran.  *Id.* at 25-26.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it

might have been brought "[f]or the convenience of parties and witnesses, in the interest of

justice."  The party moving to transfer venue bears the burden of establishing that convenience

and the interests of justice weigh in favor of transfer.  *See Int'l Bhd. of Painters & Allied Trades*

*Union v. Best Painting and Sandblasting Co., Inc.,* 621 F. Supp. 906, 907 (D.D.C. 1985).

Section 1404(a) vests discretion in the district court to conduct an "individualized, case-by-case"

analysis of whether transfer is appropriate.  *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29

(1988).

## III. DISCUSSION

As discussed above, Defendants' motion seeks two alternative forms of relief.  First,

Defendants ask the Court to transfer this action to the United States District Court for the

Southern District of Florida.  Second, if the Court does not transfer this action, Defendants ask

the Court to dismiss Plaintiff's Complaint for lack of jurisdiction and for failure to state a claim.

Because the Court will grant Defendants' motion to transfer venue, it will not reach the merits of

Defendants' motion to dismiss.

### A.  Defendants' Motion to Transfer Venue

Defendants make two distinct contentions regarding venue in their motion.  First,

Defendants contend that transfer is required because venue is not proper in the District of

Columbia.  Second, Defendants contend that even if venue is technically proper in the District of

Columbia, this Court should exercise its discretion to transfer this action to the Southern District

of Florida pursuant to 28 U.S.C. § 1404(a).  The Court rejects Defendants' first contention, but

agrees that this case should be transferred under section § 1404(a) in the interest of justice.

### 1. Venue is Proper in the District of Columbia

The Court first rejects Defendants' assertion that there is no basis for venue in this Court.

In actions where, as here, defendants include agencies of the United States, or officers or

employees of the United States or its agencies, venue is proper "in any judicial district in which

(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise

to the claim occurred, or a substantial part of property that is the subject of the action is situated,

or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).

With respect to the first basis for venue, "[t]he residence of an official defendant is determined

on the basis of the official residence of the federal officer or agency."  *Franz v. United States*,

591 F. Supp. 374, 377 (D.D.C. 1984) (citing *Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C.

Cir. 1978) ("What controls is the official residence of the federal defendant where the official

duties are performed")).  The official residences of a number of the Defendants in this action—

the DHS, the Secretary of the DHS, the Attorney General of the United States, USCIS, and the

Director of the USCIS—are all within the District of Columbia.  Defendants may rightfully

argue that the events or omissions giving rise to Plaintiff's claims occurred in Florida, but that

does not detract from the plain statutory basis for venue in the District of Columbia based on the

residence of several of the Defendants.  Venue is technically valid in this District.

### 2. This Action Should be Transferred to the Southern District of Florida

Although venue is technically valid in this District, the Court may nonetheless exercise

its discretion to transfer this action to another District Court in the interest of justice pursuant to

28 U.S.C. § 1404(a).  Determining whether transfer is appropriate pursuant to section 1404(a)

calls for a two-part inquiry.  First, the Court must ask whether the transferee forum is one where the action "might have been brought" originally.  § 1404(a).  Second, the Court must consider whether private and public interest factors weigh in favor of transfer.  *Lentz v. Eli Lilly & Co.,* 464 F. Supp. 2d 35, 36-37 (D.D.C. 2006).  In this case, the Court concludes that this action could have been brought in the Southern District of Florida originally, and that the relevant private and public interest factors weigh in favor of transferring this action to that District now.

      a.  <u>Plaintiff Could Have Brought this Action in the Southern District of Florida</u>

Venue would have been proper in the Southern District of Florida if this action had been brought there originally.  As explained above with respect to the District of Columbia, venue would be proper in this case "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides . . ."  28 U.S.C. § 1391(e)(1).  Multiple circumstances are present here with respect to the Southern District of Florida.  Both Plaintiff and Defendant Laura Castillo reside in that District and, as will be discussed in further detail below, a substantial part—if not all—of the events or omissions giving rise to Plaintiff's claims occurred there.  Accordingly, this action could have been brought originally in the Southern District of Florida.

      b.  <u>The Private and Public Interest Factors Weigh in Favor of Transfer</u>

The second step of the Court's analysis is determining whether the relevant private and public interest factors weigh in favor of transferring the action.  The Court finds that both sets of factors weigh in favor of transfer in this case because Plaintiff's claims arose in the Southern District of Florida and this is predominantly a local controversy that should be decided in that District.

i.       *Private Interest Factors*

In considering whether to transfer an action, the Court considers the following private interest factors: "(1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." *Greater Yellowstone Coalition v. Bosworth,* 180 F. Supp. 2d 124, 127 (D.D.C. 2001).

The balance of these factors weighs in favor of transfer.  First, Plaintiff's choice of forum is afforded minimal weight in this case.  Although the "plaintiff's choice of forum is ordinarily entitled to deference," that choice is conferred considerably less deference when it is not the plaintiff's home forum, has few factual ties to the case at hand, and defendants seek to transfer to plaintiff's home forum.  *Nat'l Ass'n of Home Builders v. U.S. Envt'l Prot. Agency,* 675 F. Supp. 2d 173, 179-80 (D.D.C. 2009); *New Hope Power Co. v. U.S. Army Corps of Engineers*, 724 F. Supp. 2d 90, 96 (D.D.C. 2010) ("Because the plaintiffs did not bring this claim in their home forum, this case lacks meaningful ties to the District of Columbia, and defendants seek transfer to the plaintiffs' home forum, the plaintiffs' choice of forum will be accorded little deference and the choice of forum factors favor transfer."); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996) (same).  Here, Plaintiff resides in the Southern District of Florida, where Defendants seek to transfer this action, and all of the events relating to Plaintiff's petition occurred in that District.  This factor accordingly provides little if any support for maintaining venue in the District of Columbia.

9

Second, and of predominant importance in this case, Plaintiff's claims arose in the Southern District of Florida.  Cases challenging the actions of local USCIS offices are frequently, and appropriately, transferred to the venue encompassing those local offices for this reason.  *See Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009) (transferring action relating to application for adjustment of status processed in a Texas USCIS office to the U.S. District Court for the Northern District of Texas, noting that "[w]hile the claim arguably arose in more than one district, the claim involves identifiable relevant events occurring in the transferee district and virtually none in this district."); *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008) (transferring action relating to application for adjustment of status, travel documents and employment authorization pending in a Virginia USCIS office to the U.S. District Court for the Eastern District of Virginia because "the relevant events giving rise to plaintiff's claim have occurred or will occur in that district" and although "plaintiff names as defendants certain high-level government officials with offices in this district, these individuals are not the ones who will adjudicate his applications"); *Abusadeh v. Chertoff*, No. 6-CV-2014, 2007 WL 2111036, at *6 (D.D.C. July 23, 2007) (transferring action relating to application for naturalization processed in a Texas USCIS office to the U.S. District Court for the Southern District of Texas because "Plaintiff, a resident of the Southern District of Texas, applied for naturalization in that District, was interviewed in connection with his application in that District, and has since communicated with the USCIS office in that District regarding his application").

The USCIS West Palm Beach Field Office, located within the Southern District of Florida, handled the adjudication of Plaintiff's petition.  That office issued the relevant documents in this case, including the RFEs and the denial of Plaintiff's petition that is the basis of Plaintiff's claims.  Plaintiff sent his responses to those RFEs to that office and attended

interviews there.  The alleged errors underlying the denial of Plaintiff's petition were all committed by the West Palm Beach Field Office in the Southern District of Florida.  When Plaintiff was aggrieved by that office's failure to issue a decision on his petition, he filed a previous lawsuit about this in the United States District Court for the Southern District of Florida.  In short, Plaintiff does not dispute that the entire petition, denial and appeal process described above has all occurred within the Southern District of Florida.

Instead, Plaintiff attempts to downplay the importance of these events to his claims. Despite the fact that nearly all of the events described in Plaintiff's Complaint occurred in the Southern District of Florida, Plaintiff describes his claims as if they were entirely focused on national policies that emanated from agency headquarters in the District of Columbia. Specifically, Plaintiff claims that the legal errors committed by the USCIS West Palm Beach Field Office are in line with nationally applicable policy memos disseminated from USCIS headquarters in the District of Columbia.

The Court is mindful in considering this type of argument that "[c]ourts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia.  By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).  Having examined the challenge to venue in this case carefully, the Court finds Plaintiff's argument unpersuasive for two reasons.  First, the policy memos Plaintiff relies on are irrelevant to many of the errors Plaintiff challenges in this case.  Plaintiff complains that the USCIS West Palm Beach Field Office failed to consider evidence Plaintiff submitted in support of his petition, mischaracterized that evidence, based its decision on incorrect interpretations of United States

immigration laws and wrongfully relied on mistaken assumptions about the circumstances in certain foreign countries which Plaintiff was not given the opportunity to rebut. Plaintiff does not explain how any of these alleged errors were dictated by, or even in line with, any nationwide policy or anything else emanating from the District of Columbia. Venue is clearly more appropriate in the Southern District of Florida for these claims, which make up the majority and gravamen of Plaintiff's complaint.[3]

Second, even with respect to the aspects of the denial of Plaintiff's petition that were allegedly in line with certain nationally applicable USCIS policy memos, the connection between the events at issue in this case and the District of Columbia is still tenuous at best. The gravamen of Plaintiff's Complaint is that errors were committed during the adjudication of Plaintiff's petition, which took place entirely within the Southern District of Florida. Although aspects of this adjudication may have been influenced by these policy memos, the Court finds this connection insufficient to support venue in this District: where, as here, "'the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia.'" *Al-Ahmed*, 564 F. Supp. 2d at 19 (quoting *Abusadeh*, No. 2007 WL 2111036, at *6-7).

In this respect, the Court agrees with Judge Thomas F. Hogan, who, in an extremely similar case, recently rejected the same argument put forth by Plaintiff here. Like Plaintiff in this

---

[3] For this reason, the circumstances in *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41 (D.D.C. 2011), a case relied on by Plaintiff, were different than those in this case. In that case, the Court exercised its discretion to deny a motion to transfer where "Plaintiffs' claims focus[ed] *primarily* on the policies issued from USCIS headquarters that apply to all USCIS field offices." *Id.* at 56 (emphasis added). The Court concludes that Plaintiff's claims in this case do not focus primarily on national policies.

case, the plaintiffs in *Pearson v. Rodriguez*, 174 F. Supp. 3d 210 (D.D.C. 2016), also challenged the USCIS's denial of a petition for immediate relative status for a noncitizen spouse under the AWA.  *Id.* at 211.  Plaintiffs in that case brought suit in the District of Columbia even though they resided in the Eastern District of Virginia and their petition was adjudicated in that District. *Id.* at 213.  Judge Hogan transferred the action to the Eastern District of Virginia because although plaintiffs had named certain high level officials in the District of Columbia as defendants, "the Complaint d[id] not suggest that these officials had an active or significant role in the matter and, at bottom, plaintiffs challenge[d] an adverse agency decision made by the USCIS Washington Field Office in Fairfax, Virginia."  *Id.* at 213-14.  Plaintiffs in *Pearson*, like the Plaintiff in this case, also argued that "the USCIS policy underlying the agency's decision was issued by a senior official at USCIS headquarters," but Judge Hogan rejected this argument, holding that "even if true, such 'attenuated or insignificant involvement by an official in the District of Columbia does not support venue here.'"  *Id.* at 213 (quoting *Aftab*, 597 F. Supp. 2d at 82); *see also Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67-68 (D.D.C. 2003) (finding that private interest factors favored transfer where there was no "evidence that federal officials in this forum played 'an active or significant role' in the decision to issue the permits" being challenged) (quoting *Airport Working Grp. of Orange Cty., Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002)).  The Court finds this reasoning persuasive and equally applicable to this case.  Despite Plaintiff's best attempts to argue otherwise, it is clear that the claims in this case arose in the Southern District of Florida.

The remaining private interest factors are of less importance in this case, but the Court notes that they are either neutral or also support transferring this case to the Southern District of Florida.  The Defendants' choice of forum is the Southern District of Florida.  No showing has

been made that any potential witnesses would not be available to testify in either of the two competing forums and accordingly the Court need not consider the convenience of witnesses factor. *Greater Yellowstone Coalition,* 180 F. Supp. 2d at 127. Even if the Court were to consider this factor, Plaintiff's argument that it favors retaining venue in the District of Columbia because this forum is more convenient for "the policymakers who drafted" the policies at issue, is unavailing. To the extent any witnesses will be necessary in this case at all—given that it is brought in part under the APA—a cursory review of Plaintiff's Complaint shows that far more witnesses would be located in Florida than in the District of Columbia. Additionally, potential sources of proof—to the extent any are necessary in this case—would appear to be easier to access in Florida, where the events at issue took place. If this case is eventually adjudicated solely based on an administrative record, that record presumably resides in the Southern District of Florida, where the adjudication of Plaintiff's petition occurred, not in the District of Columbia. *See Sierra Club*, 276 F. Supp. 2d at 69 ("The location of the administrative record . . . carries some weight in transfer determinations.").

In sum, the balance of the private interest factors weighs in favor of transfer.

### ii.    *Public Interest Factors*

The public interest factors also weigh in favor of transfer. These factors include "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Greater Yellowstone Coalition,* 180 F. Supp. 2d at 128.

The interest in deciding local controversies at home is the public interest factor of most importance in this case. The parties dispute whether this case presents a local controversy. "To

determine whether a controversy is local in nature, courts consider a wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official." *Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008).

For many of the same reasons discussed above, the Court concludes that this case is predominately a local controversy that should be decided in the Southern District of Florida. Plaintiff resides within the Southern District of Florida and Plaintiff's petition was adjudicated and denied by the USCIS West Palm Beach Field Office located in that District. *See Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 19 (D.D.C. 2009) (claim relating to application for naturalization was a local controversy for Maryland because "the plaintiff resides in Maryland and has conducted both his fingerprinting and his application interview at USCIS offices located in Maryland" and "the plaintiff's application for naturalization is currently pending before the Baltimore USCIS office and officials there are responsible for adjudicating his application"); *Sierra Club*, 276 F. Supp. 2d at 71 (challenge to permits issued in Florida was a local controversy for Florida despite the fact "that the controversy ha[d] a national aspect," in part because "the decision-making process up to and including the final record of decision took place not in Washington but in Florida"). Additional facts point toward the local nature of this controversy. Plaintiff asks this Court to compel action—the approval of Plaintiff's petition for his wife—that would occur in Florida. *See Abusadeh*, 2007 WL 2111036, at *6 (granting motion to transfer in part because "the action that Plaintiff seeks this Court to compel is one that will

occur not in the District of Columbia, but rather in Houston, Texas.").  And, although it is not completely clear, presumably Plaintiff's wife would reside with Plaintiff in the Southern District of Florida if granted a visa.

Although *some* of the errors Plaintiff alleges that the USCIS West Palm Beach Field Office committed in denying his petition are in line with nationally applicable policies laid out in USCIS policy memoranda, there certainly does not appear to have been any "personal involvement by a District of Columbia official" in this case.  *Otay Mesa Prop. L.P.*, 584 F. Supp. 2d at 126.  It would also be a stretch to conclude that this case is one of "national significance," Pl.'s Opp'n at 18, simply because of these memoranda.  This is a local controversy, and the Southern District of Florida's interest in deciding it locally weighs in favor of transferring this case.

The remaining public interest factors are of less relevance in this case, but if anything they also point toward transfer.  This case is governed by federal laws, of which both this District and the Southern District of Florida are equally familiar, and the parties have not presented the Court with any evidence as to the relative congestion of the calendars of the two Districts.  However, the Court notes that the fact that the previous lawsuit related to this petition was filed in the Southern District of Florida indicates that venue in that District may also be appropriate for this action.

In sum, the Court concludes that this case could have originally been brought in the Southern District of Florida, and that the balance of the private and public interest factors weigh in favor of transferring this action to that District.  Accordingly, the Court will exercise its discretion under 28 U.S.C. § 1404(a) to transfer this action to the Southern District of Florida.

**B.  Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim**

Defendants have also moved this Court, in the alternative, to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim.  Defs.' Mot. at 10-27.  Because the Court grants Defendants' motion to transfer venue, it will not address the merits of Defendants' motion to dismiss on these grounds.  Defendants' motion in these respects will be denied without prejudice to it being refiled, if appropriate, in the United States District Court for the Southern District of Florida.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to transfer this action to the United States District Court for the Southern District of Florida and DENIES WITHOUT PREJUDICE Defendants' motion to dismiss Plaintiff's Complaint for lack of jurisdiction and failure to state a claim.  An appropriate order accompanies this Memorandum Opinion.

Dated: February 16, 2017

                                        /s/
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge